1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EVANS, | Case No. 1:21-cv-00093-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| MARTIN, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | (ECF Nos. 1, 11, 12) |
| | **FOURTEEN (14) DAY DEADLINE** |

## I.     Background

Plaintiff David Evans ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On April 13, 2021, the Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable claim against Defendants Guerra, Jolly, and Lopez for excessive force in violation of the Eighth Amendment for the incident on January 19, 2019 and against Defendant Guerra for sexual assault in violation of the Eighth Amendment for the incident on January 19, 2019, but failed to state any other cognizable claims or properly joined claims against any other defendants. (ECF No. 11.) The Court ordered Plaintiff to either file a first amended complaint or notify the Court of his willingness to proceed only on the cognizable claims identified by the Court. (*Id.*) On May 14, 2021, Plaintiff notified the Court of his willingness to proceed on the cognizable

1  claims identified by the Court.  (ECF No. 12.)

2  **II.  Screening Requirement and Standard**

3        The Court is required to screen complaints brought by prisoners seeking relief against a

4  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

5  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

6  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

7  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

8        A complaint must contain "a short and plain statement of the claim showing that the

9  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

10  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

12  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

13  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

14  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

15        To survive screening, Plaintiff's claims must be facially plausible, which requires

16  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

17  for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

18  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

19  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

20  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

21        **A.  Allegations in Complaint**

22        Plaintiff is currently housed in California State Prison.  The events alleged in the

23  complaint occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP") and at

24  California State Prison in Lancaster.  Plaintiff names the following defendants:  (1) John Martin,

25  Correctional Sergeant, (2) Ralph Diaz, Director of California Department of Corrections and

26  Rehabilitation ("CDCR"), (3) Christian Pfeiffer, Warden at KVSP, (4) Heather Diaz, Clinical

27  psychologist, (5) John Bradford, psychologist, (6) W. Mathews, Lieutenant, (7) Kohler,

28  Lieutenant, (8) B. Cope, Sergeant, (9) J. Hernandez, Sergeant, (10) Stanley, Sergeant,

(11) Ernesto Diaz, Correctional Officer, (12) Anthony Reed, (13) Christian Ramirez, Correctional Officer, (14) A. Aguilar Correctional Officer, (15) E. Figueroa, Correctional Officer, (16) R. Jolly, Correctional Officer, (17) J. Lopez, Correctional Officer, (18) Alan Guerra, Correctional Officer, (19) Arrezola, Correctional Officer, (20) Anthony Reed, Correctional Officer, (21) C. King, Correctional Officer at Lancaster, and (22) Lugos, Lieutenant at Lancaster and John Does. All defendants are sued in their official and individual capacities.

Plaintiff alleges that on January 19, 2019, he informed John Doe in B Facility he was feeling suicidal and he was escorted to Medical holding cage. Plaintiff spoke to Defendant Heather Diaz and told her he was feeling suicidal because "information and photos were recently leaked on social media about Plaintiff's same sex relations and after finding out, Plaintiff's wife ended the relationship and communication with his daughter." He told Defendant Heather Diaz he was in emotional insanity, was depressed and was suicidal. Defendant Heather Diaz continued to ask him questions about why and how she could help. Plaintiff told her he had pills he was going to take. She had officers search his cell and they reportedly did not find pills. She then released Plaintiff to return to his assigned cell. When the officers arrived to escort him, Plaintiff told them he had safety concerns.

Plaintiff was taken to B-Facility Sergeant's office and questioned by Defendant Sgt. Hernandez. Plaintiff informed Defendant Hernandez, and also Sgt John Doe, and Correctional Officers, Guerra, Jolly and Lopez, who were also in the office, he was concerned because of his sexual orientation, social media posts that he would be in danger. None of the officers were concerned and Sgt. Hernandez told Plaintiff that his safety concerns were not valid, and Plaintiff was placed in a B-Facility holding cage. Defendants Guerra, Jolly, and Lopez came to escort Plaintiff back to his cell. As they were walking, Plaintiff realized he'd forgotten his id card in the cell and turned to his left. Without warning or provocation Plaintiff was grabbed by Jolly and Lopez and slammed on the ground with extreme force and violence. They pinned and held Plaintiff down face down, as Defendant Guerra stated "you like it rough" and placed his state issue baton in Plaintiffs anus forcibly through the outside of Plaintiff's pants. Plaintiff was handcuffed and shackled excessively tight. He was stood up and then violently slammed against

the wall.  His shirt was cut off his body from behind.  Plaintiff turned his head to see who it was, but he was punched multiple times in the face and forced to face the wall.

Defendant Sgt. Hernandez arrived and said "I wanna see if he has breasts" and Plaintiff was forced to turn around and Sgt. Hernandez began to fondle and squeeze Plaintiff's breast.  He was placed in B-Facility medical holding cage, shirtless for the infliction of more humiliation and emotional distress.  He was strip searched by Defendant Lopez for contraband without incident.

Defendant Guerra issued Plaintiff a 114 lock up order for battery on a peace officer for kicking him.  Plaintiff alleges that never happened.  Defendant Guerra threatened Plaintiff that if he ever said anything about the incident, he would get worse. Defendant Guerra went to Triage to report alleged injuries but only reported a right arm injury.  The next day on January 20, 2019, Guerra returned to Triage now reporting multiple injuries on his leg.  Plaintiff was placed in administrative segregation on January 19, 2019 and placed in the Mental Health Treatment room holding cage.  Sgt. Martin came to speak to Plaintiff and after Plaintiff explained what had happened, he called Plaintiff a fag. Correctional Officer Diaz took Plaintiff to be seen by psych tech Mathews and that he was experiencing soreness in his back.  Plaintiff told Mathews that he was feeling suicidal and he was placed back in the holding cage and left handcuffed.  Plaintiff began banging his head on the holding cage door several times.  Without warning, Plaintiff was pepper sprayed with Defendant E. Diaz's oc pepper sprayed.  Plaintiff was left alone with the door closed to the treatment room trapping plaintiff inside with all the fumes, no ventilation. Plaintiff started chokings and yelling "I can't breathe, Help."  Plaintiff started kicking the cage and yelled for help.  Plaintiff heard the treatment door open and was sprayed with 2 more cans of oc pepper spray by Defendants E. Diaz and C. Ramirez.  The treatment door was closed again, and Plaintiff could not breathe.  The pepper sprayed incidents were not recorded, in violation of policy.  At this point, Plaintiff was handcuffed blinded and hyperventilating.

Plaintiff thought he was about to be cell extracted and attacked, so he positioned his handcuffs from behind his back to the front of his body, sat on the stool and faced the rear of the cage.  The officers initiated a cruel cell extraction and fabricated reports alleging Plaintiff was allowed out the cage for decontamination, turned and rushed the riot shield.  Plaintiff alleges the

4

officers reports contradicted what they saw as Plaintiff's conduct and what they reported would violate policy.

Plaintiff alleges what happened was that Defendant Reed rammed Plaintiff with the riot shield, using his 400 lb body weight and pinned Plaintiff. (ECF No. 1, ¶ 85.) Plaintiff was given orders to allow his legs be shackled, but he was pinned down and could not move his legs and he told them so. Defendants responded with baton strikes on his body and thigh. Defendants knew Plaintiff could not move because he was pinned with the riot shield, but they still demanded he move his legs to be shackled knowing that he could not do so because he was pinned. They kept beating him. After a time, Reed released the shield so Plaintiff could move his legs to be shackled.

Defendant Correctional Officer Diaz applied the restraints excessively tight. Then Defendant Correctional Officer Diaz and Ramirez grabbed Plaintiff by the shackles and violently snatched Plaintiff, dragging him out of the treatment room. It was painful including cuts into the flesh of his ankles. (*Id.* ¶ 95.) Out in the hallway, he was pepper sprayed and beaten until he went unconscious.

Plaintiff alleges on information and belief that Defendants Sgt Martin, E. Diaz, C. Ramirez and A. Reed were personally involved in the force. He alleges that Aguilar, Marin and Figueroa failed to protect Plaintiff. (*Id.* ¶ 100.)

Plaintiff became conscious and could not walk but was escorted to the A-pod shower for decontamination. They cut off his shirt and boxers because there were "boot prints" all over. He was then escorted naked to another shower, in front of both female and male staff and officers, and they said, "you're a fag, you'll like this." (*Id.* ¶ 106.) Plaintiff was traumatized, humiliated, embarrassed. Plaintiff has been diagnosed with gender dysphoria: distress.

After being decontaminated, Plaintiff was taken to an outside hospital for further evaluation. Plaintiff got a CT scan which showed a concussion, x-rays for possible broken ribs, stitches for over his right eye and treatment for multiple contusions over the face, scalp and extremities.

///

Plaintiff returned to KVSP and was placed on suicide watch. Defendant Heather Diaz came to speak to him. Plaintiff told her he wanted to die. She asked sarcastically "how did that work for your yesterday. She asked how can the crisis bed help you? Did he want a medication change? Plaintiff told her that his medication was fine. She told him she was glad he was in Ad Seg and that he would put in a referral for Plaintiff to follow up with the clinician and asked, "how can the crisis bed help you." He told her he wanted her to tell him how she could help. (*Id.* ¶ 118.)

Plaintiff felt helpless and tried to commit suicide by swallowing 2 razor blades. The psych tech on watch saw him and Plaintiff was taken back to the outside hospital. Before being taken to the hospital, Plaintiff saw another psychologist in the Triage Treatment Ara ("TTA"), John Bradford. Bradford told Plaintiff that Bradford would not admit him to crisis bed because he was disrespectful to Dr. Diaz. Plaintiff was cleared with the razors ingested in this body. Plaintiff returned from the hospital to Ad Seg.

On January 21, 2019, Plaintiff was waken at 1:00 a.m. and told by a sergeant that he was going to the crisis bed. While on crisis bed, Plaintiff spoke to several psychologists concerning his suicidal ideation. On January 23, 2019, Plaintiff was issued a CDC 114 lock up order for "serious bodily injury on a peace officer" stating that ASU Sgt Martin fractured his hand while battering Plaintiff.

On January 25, 2019, Defendant Heather Diaz came to the crisis bed. She asked if Plaintiff would like to talk to her. He told her everything he was experiencing and broke down. She was sympathetic and said, "why didn't you tell me."

On January 28, 2019, Plaintiff was discharged from crisis bed and rehoused in ASU. The plumbing in the cell he was housed in did not work, the sink did not drain and when the adjacent cell ran the water, it would leak in Plaintiff's cell. (*Id.* ¶ 133.) The sink water smelled like sewerage and was contaminated with feces. He used his cup to drain the feces and they would not give him another cup. Plaintiff asked second watch officer Arrezola and third watch officer Aguilar to submit a work order. They told Plaintiff that they had done so. (*Id.* ¶ 138.) Plaintiff submitted requests and Sgt. Stanley told Plaintiff that he put in a work order request. Defendant

Aguilar refused to sign Plaintiff's CDCR 22 form until Plaintiff removed the line saying that he was subjected to these conditions as retaliation for is excessive force complaint. Once Plaintiff forgot to wash out the cup and took his pills with contaminated water and became sick. (*Id.* ¶ 143.) The plumbing was fixed on February 27, 2019, subjecting Plaintiff to foul water for 31 days.

Plaintiff was charged on February 5, 2019 $54.90 for canteen he never received.

On February 28, 2019, Defendant Lt. Kohler held a disciplinary hearing on the fabricated battery on a peace officer. Lt. Kohler order Plaintiff removed and denied Plaintiff's due process rights to attend his hearing. Plaintiff's investigative employees, Defendant King and Lugos, refused Plaintiff's right to question witnesses and there was a lack of evidence, but Plaintiff was still found guilty. (*Id.* ¶ 157.) Plaintiff was given a 39-month security housing unit term.

Plaintiff alleges Dr. Heather Diaz violated his right to confidentiality during and after his mental health evaluation and violated HIPAA and violated the Eighth Amendment.

Plaintiff alleges as a result of the excessive force, he has suffered physical injuries in the form of damage to his face, scalp, back, left calf, loss of consciousness, blunt force trauma causing glaucoma, severe pain, dizziness, sleep deprivation, post-traumatic stress disorder and other injuries. He has suffered pain, humiliation, degradation, emotional distress, extreme embarrassment, severe mental distress.

Plaintiff first claim is for violation of the Eighth Amendment against John Martin. Plaintiff's second claim is for violation of the Eighth Amendment against Dr. Heather Diaz. The third claim is for violation of the Eighth Amendment against R. Jolly, J. Lopez, and Adam Guerra. The fourth claim is violation of the First and Eighth Amendments against J. Hernandez, A. Guerra, A. Reed, A. Aguilar, Arrezola, Marin, E. Figueroa, W. Mathews, Kohler, B. Cope, Stanly, Cristian Ramirez, John Bradford, Cristian Pfeiffer and Ralph Diaz.

Plaintiff seeks declaratory relief, injunctive relief, compensatory and punitive damages.

**B.      Discussion**

Plaintiff's complaint is in violation of Federal Rules of Civil Procedure 8, 18, and 20.

///

### 1.    Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57.

Plaintiff's complaint is not a short and plain statement of his claims.  Plaintiff's complaint improperly reads like a laundry list of several incidents that have occurred while he has been housed either in the medical holding cage, crisis bed or in Ad Seg.  Plaintiff's complaint also improperly lumps certain defendants, as "other officers," together.  Further, as discussed below, Plaintiff has failed to limit his claims to those properly joined in a single action.

### 2.    Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

The claims for conduct at Lancaster are unrelated to claims for conduct at KVSP. Plaintiff may not bring allegations regarding events at Lancaster with events occurring at KVSP. Plaintiff also may not include unrelated claims against defendants at the same facility involving separate, unrelated events.  Plaintiff may not join claims for excessive force, with those for

deliberate indifference to medical care, with violations of Due Process for disciplinary

proceedings.  As Plaintiff is attempting to bring multiple claims that arose from different and

unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

### 3. Supervisory Liability

Insofar as Plaintiff is attempting to sue Defendants Ralph Diaz, Christian Pfeiffer,

Mathews, Kohler, or any other defendant, based solely upon their supervisory role, he may not do

so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their

subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v.

Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d

1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or

knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045

(9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.

Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established

when an official sets in motion a 'series of acts by others which the actor knows or reasonably

should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at

570.  Supervisory liability may also exist without any personal participation if the official

implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), *abrogated on other

grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his

deprivation resulted from an official policy or custom established by a . . . policymaker possessed

with final authority to establish that policy." *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713

(9th Cir. 2010).  When a defendant holds a supervisory position, the causal link between such

defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v.

Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.

1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

civil rights violations are not sufficient.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has failed to allege direct participation in the alleged violations.  He does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions.  Plaintiff has not alleged factual support that these defendants personally participated in the alleged deprivations.

In addition, Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy."

### 4.    Official Capacity

Plaintiff has sued each of the defendants in their official capacities.  A suit against a public employee in his official capacity is equivalent to a claim against the employer, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009).  "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr*., 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override . . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund Ins. Co. v. City of Lodi, Cal*., 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003).  "The State of California has not waived its Eleventh Amendment

immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittma*n, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

To the extent that Plaintiff seeks damages from Defendants in their official capacities, the Eleventh Amendment bars Plaintiff's suit. *See Mitchell v. Washington*, 818 F.3d 436, 441 (9th Cir. 2016). To the extent Plaintiff seeks prospective declaratory or injunctive relief, only cognizable claims against them may go forward. *See Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

### 5. Eighth Amendment

#### a. Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).

Incident on January 19, 2019 escort from program office

Plaintiff alleges excessive force by Guerra, Jolly and Lopez on the escort from the program office. Liberally construing the allegations, Plaintiff states a cognizable claim for excessive force.

Plaintiff also alleges a sexual assault by Defendant Guerra.  "[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). There are occasions when legitimate penological concerns require invasive searches, and the courts owe prison staff deference because of prisons' "unique security concerns." *Id.* at 1145. Thus, when the assault begins as a legitimate, albeit invasive, penological procedure, the prisoner must show that the official's "conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Id.*; *see Palmer v. O'Connor*, No. 2:11–CV–2927–KJN (P), 2013 WL 1326207, at *4 (E.D. Cal. Mar. 29, 2013) ("Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. 'Even if plaintiff believed that there was a sexual aspect to the search, more is needed.' ").

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendant Guerra for sticking his baton in Plaintiff's anus.

Sgt. Hernandez rubbing Plaintiff's breasts

Claims alleging brief inappropriate touching with sexual overtones have been dismissed as non-cognizable under the Eighth Amendment.  *See Watison v. Carter*, 668 F.3d 1108, 1112–14 (9th Cir. 2012) (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim where defendant officer allegedly entered prisoner's cell while he was on the toilet, rubbed his thigh against the prisoner's thigh and began smiling in a sexual way, and left prisoner's cell laughing).  The court in *Watison* found no sexual harassment in violation of the Eighth Amendment where a plaintiff alleged a correctional officer entered the plaintiff's cell while the plaintiff was on the toilet, began to search the cell, ignored the plaintiff's request that he leave, rubbed his thigh against the plaintiff's thigh while sexually smiling, and left the cell laughing.  *Watison*, 668 F.3d at 1112.  *Watison* reasoned

that the officer's "alleged wrongdoing was [not] objectively 'harmful enough' to establish a constitutional violation." *Id.* at 1114 (internal quotation marks omitted); *see Palmer v. O'Connor*, No. 2:11-CV-2927-KJN, 2013 WL 1326207, at *4 (E.D. Cal. Mar. 29, 2013) ("Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. 'Even if plaintiff believed that there was a sexual aspect to the search, more is needed.' ").

To the extent that Plaintiff claims he was subject to sexual misconduct by defendant Hernandez, Plaintiff fails to state an Eighth Amendment claim. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Watison*, 668 F.3d at 1112 (*citing Jordan*, 986 F.2d at 1525 (en banc)). "The alleged pain may be physical or psychological." *Id.* "Nevertheless, the inmate must objectively show that he was deprived of something 'sufficiently serious.'" *Watison* at 1112 (internal quotation marks and citations omitted).

Plaintiff has failed to allege facts to support severe psychological pain required to state an Eighth Amendment claim. *See also Cruz v. Maldonado*, No. 118CV0696LJOJLTPC, 2019 WL 3458658, at *2 (E.D. Cal. July 31, 2019), appeal dismissed sub nom. *Trujillo v. Maldonado*, No. 19-17032, 2020 WL 1856473 (9th Cir. Apr. 6, 2020).

<u>Pepper Spray on January 20, 2019 in the Medical Holding cell and extraction</u>

Plaintiff may be able to state a cognizable claim against Defendants E. Diaz, C. Ramirez, Sgt Martin, and A. Reed for excessive force, but is cautioned that he may not join unrelated incidents. This claim is not properly joined pursuant to Federal Rule of Civil Procedure 18. Plaintiff fails to identify any of the "other" defendants involved in this incident. Regardless, claims not properly joined may not proceed in a single action.

Plaintiff alleges that Defendants Correctional Officers Aguilar, Marin[1] and Figueroa failed to protect him in this incident. While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the

---

[1] Plaintiff has failed to name as defendant correctional officer "Marin."

13

prisoners be comfortable and provided with every amenity." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). " 'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.,* 714 F.3d 1155, 1160 (9th Cir. 2013).  The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837.  "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Plaintiff fails to state a cognizable claim against Martin, Marin and Figueroa for failure to protect.  He fails to allege that they were present or in a position to help.  Regardless, this claim is not properly joined pursuant to Federal Rule of Civil Procedure 18.  Separate unrelated claims must be filed in separate lawsuits.

Plaintiff may be able to state a claim for failure to decontaminate.  A prisoner can establish deliberate indifference by showing correctional staff failed to properly decontaminate him from the effects of pepper spray.  *Clement v. Gomez,* 296 F.3d 898, 904 (9th Cir. 2002).  However, this claim is improperly joined with unrelated claims.

### b.    Deliberate Indifference to Conditions of Confinement

Plaintiff argues the sewerage in the sink violated the Eighth Amendment.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v.*

*Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

A conditions of confinement claim may also arise from the type of "egregious circumstances" alleged by Plaintiff in this matter. *Walker v. Schult*, 717 F.3d 119, 127 (2nd Cir. 2013) (citing, inter alia, *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days).

Plaintiff fails to state a cognizable claim. Plaintiff alleges that when he told Defendants Stanley, Arrezola and Aguilar about the condition, they put in work orders. Plaintiff does not allege that that these Defendants had any control over when work orders get completed. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

///

///

### c. Deliberate Indifference to Medical Need

To succeed on an Eighth Amendment claim predicated on allegedly deficient medical care, a plaintiff must establish that: (1) he had a serious medical need and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. A deliberately indifferent response may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care was provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, a defendant will be liable for violating the Eighth Amendment if he knows that a plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

<u>Defendant Heather Diaz, Psychologist</u>

Plaintiff alleges two interactions with Dr. Diaz. On January 19, 2019, Plaintiff told her he was suicidal. She then asked how she could help and directed a search of his cell to remove pills Plaintiff said he was going to take.

As discussed above, this claim does not appear to be properly joined with claims against other defendants named in this action involving different events. Further, Plaintiff's other assertions of deliberate indifference to serious medical needs do not rise to the level of an Eighth Amendment violation. There is no indication that Plaintiff suffered any harm from Dr. Diaz's alleged action/inaction on January 19, 2019.

The second interaction occurred on January 25, 2019. Plaintiff fails to allege any facts that Defendant Heather Diaz knew he faced a substantial medical need and failed to take reasonable measure to abate that risk. Even if Plaintiff could state a claim against Defendant

Heather Diaz, the claims are improperly joined.

Plaintiff also asserts that Defendant Heather Diaz violated HIPAA confidentiality. "HIPAA itself does not provide for a private right of action." *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007). Accordingly, Plaintiff cannot state a claim against any defendant based on an asserted violation of HIPAA.

Defendant Bradford, Psychologist

Plaintiff fails to state a claim against Defendant Bradford. The allegations are too unclear for the court to determine if a claim could be cognizable.  It is unclear if Plaintiff went to the hospital after swallowing razor blades, or if the interaction with Defendant Bradford occur before or after the hospital visit.  Regardless, this claim is not properly joined pursuant to Federal Rule of Civil Procedure 18.  Separate unrelated claims must be filed in separate lawsuits.

Defendant Mathews

Plaintiff had a conversation with Defendant Mathews on January 20, 2019. Plaintiff's allegations of deliberate indifference to serious medical needs do not rise to the level of an Eighth Amendment violation. There is no indication that Plaintiff suffered any harm from Defendant Mathew's alleged action/inaction on January 19, 2019.

### 6.     First Amendment – Retaliation

Plaintiff asserts that all of the defendants retaliated against him in violation of his First Amendment rights.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F. 2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v.*

*Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. Plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

As pled, Plaintiff's complaint improperly violates the joinder requirements of Federal Rules of Civil Procedure 18 and 20. To the extent Plaintiff is attempting to allege multiple instances of asserted retaliation, the Court declines to separately screen those allegations at this stage of the proceedings. Of importance, the Court notes that the bulk of Plaintiff's allegations concerning instances of alleged retaliation are conclusory in nature, involving a recitation of the elements of the claim and lacking sufficient factual matter to state a plausible claim for relief. There is no indication from the allegations in the complaint that any individual took an adverse action against Plaintiff because of any protected activity or that the actions of any defendant had a chilling effect on Plaintiff's future First Amendment activities or that he suffered any harm that was more than minimal.

### 7.    Due Process

Plaintiff alleges Fifth Amendment and Fourteenth Amendment Due Process claims.

"[T]he Fifth Amendment's due process clause applies only to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Since the only defendants named in this action are employees of a department of the state, the Fifth Amendment does not apply. The

Fourteenth Amendment applies to actions of the state officials. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543, n.21 (1987). The Court, however, is unsure what claim Plaintiff is attempting to bring under the Fourteenth Amendment. If Plaintiff is attempting to allege that one or more Defendants violated his right to procedural due process or substantive due process, then he needs to allege facts to support each element of those legal claims against particular Defendants.

To the extent a disciplinary action is at issue, the Court provides the following legal and pleading standards. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. As long as the *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995). In addition, "some evidence" must support the decision of the hearing officer, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." *Hill*, 472 U.S. at 455–56 (emphasis added).

Plaintiff fails to state a cognizable claim. Plaintiff's complaint fails to adequately allege that the disciplinary proceedings against him lacked written notice of the charges, 24 hours to prepare, the right to call witnesses and present documentary evidence, receive assistance if the

issues were complex or receive a written statement by the fact finders. The Court acknowledges Plaintiff's allegations that Plaintiff was removed, and his investigative employees did not ask the questions Plaintiff wanted.

### 8. False Reports

Plaintiff alleges that various Defendants made false reports against Plaintiff. *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Plaintiff's complaint therefore fails to state a claim based on allegations of a false disciplinary report.

### 9. Verbal Harassment

Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim. See *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). However, verbal harassment may violate the constitution when it is " 'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting *Keenan*, 83 F.3d 1083 at 1092).

### 10. Deprivation of Property

Plaintiff is complaining that he was charged for canteen he did not receive.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532 & n.13 (1984) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th

Cir. 1985). On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. And, "California law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95). Additionally, "the Due Process Clause is [ ] not implicated by a negligent act of an official causing unintended loss of or injury to . . . property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Plaintiff appears to be alleging an unauthorized intentional deprivation of his funds. There are no allegations suggesting that his property was taken pursuant to an established state procedure. As California law provides an adequate post-deprivation remedy, Plaintiff has failed to state a claim under the Due Process Clause for deprivation of his property.

### 11. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about

issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Amer. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. Int'l Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

### 12. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### III. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendants Guerra, Jolly, and Lopez for excessive force in violation of the Eighth Amendment and Defendant Guerra for sexual assault in violation of the Eighth Amendment, arising from the incident on January 19, 2019.

However, Plaintiff's complaint fails to state any other cognizable claims for relief, or the claims are improperly joined with other unrelated claims in violation of Federal Rule of Civil Procedure 18.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed January 15, 2021, (ECF No. 1), against Defendants Guerra, Jolly, and Lopez for excessive force in violation of the Eighth Amendment and Defendant Guerra for sexual assault in violation of the Eighth

Amendment, arising from the incident on January 19, 2019; and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted or failure to properly join claims pursuant to Federal Rule of Civil Procedure 18.

***

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 19, 2021**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE